Good morning, your honors. May it please the court, I'm Marlon Watlington. I represent the Santa Monica-Malibu Unified School District in this appeal. The issue before this court is whether the district violated the parent's right to participate in the IEP process by going forward with the June 8, 2010 IEP team meeting without the parent present. I think it's clear from the paperwork from both sides that the district's position is it did so because it would be in violation of another statute or another portion of the IDEA if it had not gone forward with that. I'm sure the courts have taken ample time. Mr. Wallington, let me ask you a question. Yes. Where in the record does it show that the school district could not have rescheduled the June 8, 2010 IEP meeting for a time during the extended summer year 2010? There is no there is no indication in the record. Then why didn't you? The district's position is it made that offer to reschedule that meeting. It made an offer to reschedule the June 8, 2010? Correct. At for what date? If your honors look at the record, the email exchange between the parties, we all agree or the parties all agreed that if the parent wanted to continue the IEP and reconvene it during the ESY year that offer was made by the district in the email exchange. Could you give me a record citation of that because we have some cases that say where the where the parent refuses to participate in the EIP that excuses the from that event. But I was unable to find that there was an offer to the parents after the June 8, 2010 meeting was called off for reasons unexplained by the by the father. But I would really like to have some some citation to the record as to when the district said well if you can't make that date we'll make it another date. Give me that, would you? If your honor would look, if your honors would look at the administrative record, volume 11, page 2308. I'm looking at it. I'm sorry. I'm looking at it. What is it? It says, hi Mark, so we are going to have to meet tomorrow notwithstanding his request to be postponed because of our annual timeline. Is that it? Correct. The team will meet and share assessments as scheduled, however, we can reschedule with you during ESY, but that's not the meeting with the parents on June 8th, right? You're going to go ahead and meet without the parent. Yeah. Because of a deadline? Because of two you had to meet a triennial deadline? Is that reason valid? That reason is valid, your honor. We had a triennial deadline to meet, but more importantly. Wait, how did you have a triennial deadline to meet? Don't you have to meet once every three years? The triennial is once every three years. Yeah, and hadn't you only, hadn't you already met like about a year before? Why were you at a three-year deadline already? Because we had moved up the triennial assessment to deal with the parents request in April of 2010 that we implement CART as a service for the extended school year and the following school year. But was that a voluntary decision? I mean there was no, no one was going to say you had already had three years passed. That was a decision that was made and agreed to by both parties in order for the district to have the assessments it would need to determine whether or not CART would be an appropriate substantive change to IEP to replace the one-on-one aid that was previously provided and that the parents had complained was a problem. So why couldn't you, once you had a scheduling problem, have said, you know, we agreed to have this earlier deadline but now we need to reschedule so we'll push the triennial deadline that we agreed to be early back a little bit? Your honors, I can't sit here and tell you that that wasn't a possible action that the district could have took, but that was just one of the dilemmas that the district was dealing with. And what was the other dilemma? The more important dilemma was that we had the final week of school the next week and we had the ESY services starting after that. The ESY is the extended school year services. The district had absolutely no offer in place that was a valid offer of fate for the 2010 extended school year. Why do you say that? Didn't you have an offer from the fall that extended through the ESY? Excellent question once again, your honor. Now I wanted to get to that. That was one of the most important parts I wanted to make in the brief. The district has indicated that the September 23, 2009 IEP covered that extended school year because it's dated September 23, 2009 through September 21, 2010. The problem with that argument is if your honors go back and look at the signed consent that the district received in October of 2009, that consent was not, it was a qualified consent. The parents signed the consent stating that we agree to all of the services you're providing for her in middle school for this eighth-grade year but we don't agree to any services that are offered at Santa Monica High School. That's a specific language of the consent. But the high school was starting in the fall so aren't we just talking about the ESY the summer and wouldn't the summer have happened at the middle school anyway? No, the extended school year services after your eighth grade year or after any school year progress on to the next year. So your extended school year services are to prevent recruitment and provide faith for the following school year and they're considered part of the following school year. Wait a minute, I want to make sure I understand that answer. I thought the email exchange you said the one before we just read. Highland, I'm going to need to reschedule. I understand it may be hard to get everyone together on a different day. That's fine. I guess we can do it during ESY. I just want to make sure that the following two things are in her current IEP. Funding for Sylvia Rotfleisch, her ESY, and for the next school year. And two, ESY summer school this summer at Samoa High. Can you check that for me? And if they're not in there, can you and I just get together for a five-minute IEP to put them in? Neither of them has ever been in dispute. The school district has been willing to pay for them all along so there shouldn't be a problem with them. Isn't that what transpired? Yes. You got them? So what was the issue for the ESY? I think that in answering both questions, the question that was originally posed to me was the ESY. Why couldn't it be done at the middle school? I think this email confirms that the ESY is on to the next grade level which would be the ninth grade at a different school at Santa Monica High School. But it was in the ESY from before and it consented to Samoa High. No, no, this, your honor, there's strict language as to what applies to consent and I can and I can address that also. This email does not constitute consent to any placement at Samoa High. The offer had not been made as of the date of this email. The offer was not made until June 8, 2010 after the IEP team meeting. But if your honors would would do the district the favor of reviewing 20 USC 1414 parentheses A1 parentheses cap block D and California Education Code section 56021.1. It clearly establishes what consent is to a valid IEP offer. Were those in your brief? Those were not in my brief, your honor, and that's why I said I wanted to address the contention that was made by by the appellees that the September 23rd 2009 IEP would have been valid for that ESY school year. Didn't they make that argument in their opening brief? Well, they're in their in their opposition brief, correct. Oh, sorry, sorry, why didn't you cite this in your reply brief? Well, your honor, to be truthful with you, I didn't understand what they were saying. By the fact that they were alleging that the September 23rd 2009 IEP would have controlled that that ESY school year because that was a regular school year offer. In reviewing the documentation yesterday, I must confess, I clearly understood what they were saying at that point, and that's why I wanted to make sure the court understood that for two reasons. I'm sorry, your honor, and the rules under the IDEA as far as it pertains to litigation is that these things are done in a de novo matter, and I apologize once again for not bringing this to the court before, but supplemental evidence is allowed in these case, and definitely evidence pertaining to what the law is in a particular argument is allowed in these in these cases. Wait a minute, counsel. You're saying that you just didn't understand what was being argued, but you re-reviewed the arguments and now understand it, and it's okay for you to come before us and put in new argument and new evidence because the statute says you can? Respectfully, I don't agree that it is new evidence, I mean, or new argument, because... Well, I don't understand why you were citing a new evidence. No, I was citing a section that dealt with consent. Okay. Okay. Had you pointed us to this October lack of consent? Where is that in the record? Where you say that they offer? That is in the September 23rd, 2009 IEP, which, Your Honors, is in the administrative record at volume 10, starting at page 20 to 11, and it is a 26-page IEP from that date. Where is the part where they say they don't consent to the summer? The very last page of the IEP is signed by all the parties that were present, including the parents, at the IEP team meeting, and the parents indicate under consent, check the box that reads, agree with the IEP with the exception of, and then they wrote in, the ending of ABT provided by Kim Hiddleston and the suggested high school placement at Santa Monica High School and the goals that suggest that placement is appropriate there. That is not new evidence. What ER page is that? That would be ER page 2237. Either 37 or 36, I'm not sure. I don't see it on 37 or 36. Your Honor, if I may, I can pull it out and show you where it's in the Are you citing? Right, it has June 8th at the top. Your Honor, it would be, it would be before that, it would be the IEP before that. I'm sorry if I said it's the wrong document. Council, yeah, the September 23, 2009 IEP is 2211, well, that runs from 2188 to 2213. You got a better page site for the handwritten? If it runs to 2213, Your Honor, it would be 2213. 2313? 2213 or 2313? I apologize for that, if the site was wrong. I had it as 2211, but I cited one page to it in the excerpt, so I just added 26 pages to it. Okay. All right, I notice your time is up. Thank you very much. Good morning, Your Honors. Alexis Casillas on behalf of BP, the appellee. Just for your reference, the limited consent Mr. Wadlington is referring to can be found on page 2215, and I think this issue of consent, while new and therefore not necessarily be given much weight by this court, it's also not being appropriately relayed. If you actually look at the statute in 22, I'm sorry, 20 U.S.C. 1415, nowhere does it say that consent has to be given in an IEP. Your Honors are correct that the email from the family indicating that they wanted to assure that certain services were provided for the 2010 extended school year was enough to relay consent. Beyond that, the reading of the family's consent on page 2215 is not accurate. The family consented to the implementation of the extended school year offer, they just disagreed that it was appropriate. In the same way that the family had consented to the 2009-2010 program, they just disagreed that it had been appropriate. So there always was an offer in place for the 2010 extended school year. So the district's conclusions that they had to have a meeting on June 8th because they had to get an offer in place for 2010 is just illusory. There was no fire. The program was already going to go in place. That argument is also undermined if you actually look at the ESY offer from the June 8th, 2010 IEP meeting. If you actually compare the services offered, they're nearly identical and you're going to be looking at page 2211 and 12, which is the offer from the September 2009 IEP, and comparing that to page 2235 and 36, which is the June 8th, 2010 offer. If you look at those two offers of FAPE, the specialized academic instruction offer, the deaf and hard of hearing services offer, and the aid offer are identical. They have the same start dates, they have the same end dates. The substance of the speech and language offer between the two IEPs is identical. The only difference is the start date is shifted from September of 2009 to June of 2009. But in practice, that made no difference for the 2010 extended school year. Those services are going to remain the same. The only new thing that appears in the June 8th, 2010 offer of FAPE has to do with the addition of psychological counseling. The district's offer for the 2009-2010 school year had been detrimental to DeBeshe. She developed these psychological issues as a result of having this aid assigned to her. So the district, to solve for that, wanted to add psychological counseling. However, that counseling was not intended to be in effect for the extended school year. If you look at the offer, it wasn't supposed to start until the third week of the 2010-2011 school year. There was no change for 2010 ESY in the June IEP, and the district's suggestion that they had to meet at that point in time is just not accurate. Similarly inaccurate is the district's assertion that they had to meet because of a triennial deadline. Your district did want to move that up so that they could have assessments before DeBeshe's transition from 8th to 9th grade. However, the family had already waived the deadlines. The deadline that everybody was talking about with regard to the June 8th meeting was the 60-day timeline allowed for from the point an assessment plan is proposed and when an IEP has to be convened. And if you look at the notes of the May 2010 IEP, the family specifically agreed that they were going to waive the timelines. And actually the June 8th 2010 IEP was already beyond the timeline for the triennial IEP. There was no pressing deadline given the timelines, and there was no reason that the district had to convene this meeting without the family. Well, wasn't June 8th 2010 the end of the school year? Don't teachers take vacations just like students and don't they leave town? Some teachers do take vacations. A lot of teachers, particularly the teachers who would be dealing with DeBeshe's, would be there for the extended school year. And in fact, if you look at the district's representations in their June 4th email, they suggested that they could have a meeting in the extended school year. So it wasn't the case that these people weren't going to be around for a meeting because Linda Cananzano said that they could meet again in the extended school year. Did they ever withdraw that offer to meet during the extended school year? After this email, the district made no contact with the family trying to arrange for this IEP. Instead, the district doubled down and sent two separate prior written notices saying, this is what the district's offer, we met without you, and this is what we're going to do. And even if there were going to be some attempt to have a subsequent offer in the extended school year, the damage had already been done at the point the district held a meeting with the family. When the district planned, and it's important to note, the district... Let me ask you this, did Mr. Balaguer give an alternate date to June 8th at any time? He said, I can't make it, didn't say why. I don't believe the record has any references... Well, wasn't it up to him, since he called the meeting off, to make the overture to the district and say, I can make it on these dates? It's actually not, and Congress intended that procedural compliance was a responsibility of the school district. In Doug C... But they had complied, they had set a meeting, it was he who didn't comply, it was he who called the meeting off. They complied in terms of sending out a notice that an IEP was going to be convened, but they didn't comply when they held the meeting without the family. And further, at the point that the family was not... But the reason they didn't hold the meeting without the family is Mr. Balaguer said, I can't make it. Didn't say why, but said, I can't make it. But this court has already said... And didn't say, I can't make it Friday, but I can make it Monday, or I can make it Tuesday. He didn't give an alternate date. Well, he did say, if you look at his June 4th email, he said, I can meet with you, it can be really quickly. And that was an invitation for the district to propose... That was just for the ESY. Yes. What he did say is that we can meet maybe during the ESY, right? To plan for the extended school year. Yes, exactly. And that's what you're complaining about. And I think the two... I'm sorry, you're complaining about the IEP for the following school year. Yes. When was he saying that he'd be available to meet to discuss the 2010? Extended school year? No, the 2010, the upcoming full school year. That was the meeting that was supposed to happen during the extended school year. June 8th. That was the meeting for June 8th, right? Yes. To discuss ESY and the upcoming school year. And he said, as Judge Beha said, he canceled the meeting because he couldn't make the June 8th. Okay? And then they said, we have this deadline we're going to go ahead and meet, but we can meet and talk with you, we'll have a reconvention and all of that, reconvening during the ESY, but we have a deadline to meet that they thought they had. Okay? So that's what the emails say. So the question I ask, and Judge Beha has asked, what action did the parents take to follow up on the ability to have them present at a reconvened meeting during the ESY, during the extended school year before the new school year started? Nothing? I don't believe there's anything in the record. But even if there had been, or even if there hadn't been, subsequent meetings do not solve for the earlier exclusion. And that's clear from Doug C. and Shapiro. I'd like to, I know what Doug C. said. I understand that. I'm just trying to find out what the parents are doing in this. You're invoking the IDEA. Okay? The teachers are involved in this too. This isn't just a statute that puts all the burden on the school. The parents have a role to play because they're looking out for the best interest of their child. So this is not gamesmanship. Okay? And you guys didn't even raise the procedural violation at the outset. That wasn't part of your original complaint. That all came out later. Okay? And the district hasn't objected to that. Okay? So it's before us. The fact is the decision made was to enroll D.B. in, was it Westview? Yes. It had already been made by the parents back in February. Well, that's actually an error of fact that was made by A.L.J. Gomez. If you actually look in the record, the family did apply to Westview to keep it open as an of 2010. The family wasn't even offered admission to Westview until June 8th of 2010, the exact same date as the IEP. So attending Westview wasn't this sealed IDEA before the June 8th IEP. Okay. So that's good to know. Now, the question is, with all of that before us and before you at the time, why didn't the parents attempt to meet in July or whatever, August, offer some dates as Judge Baya said, and get together? Well, I think that's not the family's obligation. But beyond that, I think the family was in constant contact. We forget that D.B. was at Santa Monica High School for the 2010 extended school year. There was contact. And there was no effort to communicate between the school district and the parents? No. No meeting was scheduled. The district made... Contact. Contact. There was contact. The family was dropping D.B. off at school. They had contact with their teachers. Counsel, you're just evading my question. This is a real-world situation. Yes. Okay? The parents and the whole thrust of the IDEA and the processes is to bring the people together as a team. Yes. The parents have been meeting with the school as a team. They have been. You're saying it's like warning parties during the summer, and if you don't call me, I'm not going to call you. So here's this friendly exchange of emails, and there's dead silence in the record after this. And I'm trying to understand the dynamic that our case law is creating in the communications between parents and school districts. It turns into a war. And that's not what the IDEA was all about. Okay? You're correct. So I'm just trying to understand. What was your client's situation during post-school? Teachers are gone. Everybody's gone for now. D.B. I mean, our case law says the convenience of the teachers is not paramount. It's for the kids. Okay. So that's their obligation. But the opinion didn't say that the parents have no obligation. They can just sit by passively and let this all occur. So what did anything the parents do to follow up on the offer that was made, we will reschedule with you during ESY? Anything? There's nothing in the record to that. Thank you very much. Thank you, Your Honor. All right. The case of D.B. and Rena Roberts v. Monica Malibu Unified School District 13-55665 is submitted.
judges: Fisher, Bea, Friedland